NOT FOR PUBLICATION                                                                          CLOSED

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANN C. BROWNFIELD,<br><br>    Plaintiff,<br><br>        v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | CIVIL ACTION NO: 07-4542 (FSH)<br><br><br>**OPINION & ORDER**<br><br><br>July 10, 2008 |

**HOCHBERG, District Judge:**

      This matter comes before the Court upon Plaintiff's motion to review a final determination of the Commissioner of Health and Human Services ("Commissioner"), pursuant to Section 405(g) of the Social Security Act, as amended ("Act"). 42 U.S.C.A. § 405(g). This motion has been reviewed and decided upon the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78. The issue before the Court is whether the decision by the Administrative Law Judge ("ALJ") is supported by substantial evidence. The ALJ determined that the Commissioner met his burden at Steps 3 and 4 of the sequential analysis in showing that Plaintiff, despite her impairments, is capable of performing work. To resolve this issue, the Court must determine whether the ALJ's determination that Plaintiff's impairments did not meet

1

or equal a listed criteria and that Plaintiff retained RFC to do light work is supported by substantial evidence.

## I.        Background

Plaintiff Ann C. Brownfield ("Plaintiff") appeals the decision of ALJ Gerald J. Ryan denying Supplemental Social Security Income ("SSI") under Title XVI of the Social Security Act. Plaintiff was born in 1968 and was 35 years old when she filed for SSI. (R. 24). When applying for SSI, Plaintiff alleged she had an eighth grade education and that she was able to speak, read, and write in English. (R. 103, 113, 117-18).[1] Plaintiff testified she last worked 2 to 3 years ago as a fast food worker[2] and lived with her boyfriend. (R. 19, 454–55).

Plaintiff filed an application for SSI on September 22, 2003. (R. 44–45). Plaintiff alleged her disabling impairments consist of leg pain from a right leg fracture in 1995, back pain, psychiatric problems, and asthma. (Pl.'s Br. 6; Def.'s Br. 7). Plaintiff's claim for SSI benefits was denied both on initial application and on reconsideration. (R. 52, 54–57). On March 17, 2005, Plaintiff had a hearing before ALJ Michael H. Noorigian. (R. 61). ALJ Noorigian issued a favorable decision on October 19, 2005.[3] (R. 35–43).

---

[1] This is contradicted by Plaintiff when she testified to attending school through part of seventh grade and claimed that she could read a little, but could not understand a newspaper and could only write her name. (R. 431, 455, 475, 479).

[2] Plaintiff worked in fast food at Great Adventure in 2003, which required serving the public and moving boxes of food. (R. 124, 126–27). In 2002, she worked in garment packing at Stratus Services Group, Inc. (R. 125).

[3] ALJ Noorigian found Plaintiff has been disabled under section 1614(a)(3)(A) of the Social Security Act since filing on September 22, 2003. (R. 42–43). ALJ Noorigian held that Plaintiff had the following "severe" impairments: disorders of the back, status post right knee fracture, and depression, the totality of which prevented Plaintiff from adjusting to any work that exists in significant numbers in the national economy. (R. 42). The ALJ also held that Plaintiff's

The Appeals Council remanded and required the ALJ to provide an evaluation of the medical evidence related to Plaintiff's impairments and RFC. (R. 31). In addition, the ALJ was instructed to provide reasons for the determination that evidence obtained after the first hearing outweighed the evidence from the State agency assessments concerning Plaintiff's mental impairments. (Id.) The Appeals Council also required the ALJ to provide further explanation for the determination that Plaintiff's substance abuse is not a contributing factor material to her disability. (Id.) Finally, the Appeals Council found that the ALJ's conclusion that Plaintiff's subjective complaints were credible was not supported by a specific evaluation. (Id.) A second hearing was held on May 22, 2007 before ALJ Gerald J. Ryan, which resulted in a decision unfavorable to Plaintiff. (R. 10–24). Plaintiff's appeal was denied by the Appeals Council on August 28, 2007. (R. 5).

ALJ Ryan considered a review of the medical evidence on record from the Paterson Community Health Center, dated from September 2001 to January 2005, which diagnosed Plaintiff with depression, anxiety, severe lower back pain, right lower extremity pain, right knee pain, and a history of alcohol and drug abuse. (R. 175–213, 279–99, 317–56). In 2003, x-rays showed post traumatic and post-operative degenerative arthritis of the proximal tibiofibular joint in Plaintiff's right knee, but no evidence of acute pathology in Plaintiff's lumbar spine. (R. 17, 316).

The ALJ considered the medical evidence from a January 12, 2004 consultative examination from Dr. Vassallo. Dr. Vassallo reported that although Plaintiff had chronic back pain, she did not exhibit neurological deficits. (R. 227). Plaintiff had normal gait and was able

---

substance abuse was not a factor material to the finding of disability. (Id.)

to bend and remove her shoes using both hands without any difficulty. (Id.). Dr. Vassallo noted that Plaintiff had a mild deformity in her right knee due to her old fracture, which was healed. (Id.). He also concluded that Plaintiff was able to perform fine and gross manipulations with both hands. (Id.)

The ALJ also considered the orthopedic consultative examination by Dr. Weber on July 20, 2005. (R. 17). Dr. Weber confirmed that Plaintiff had chronic lower back and right knee pain following her right knee surgery. (R. 375–76). Dr. Weber also found that Plaintiff had normal gait, no difficulties with transfers, and was able to perform fine motor coordination. (R. 375, 378).

The ALJ further considered the psychiatric consultative evaluation by Dr. Grosso on January 25, 2004. (R. 17). Dr. Grosso reported Plaintiff's acknowledgment of a history of four psychiatric hospitalizations and a history of drug abuse. (R. 240, 242). Dr. Grosso determined that Plaintiff had a GAF of 70.[4] (R. 243). On July 26, 2005, Dr. Miskin conducted a psychiatric consultative examination, diagnosing Plaintiff with bipolar disorder with a history of psychotic features and chronic and severe polysubstance abuse. (R. 368–73). Dr. Miskin reported that Plaintiff was only moderately limited in her ability to carry out detailed instructions, make simple work related decisions, and respond appropriately to supervision, co-workers, and work pressures. (R. 370). In addition, Dr. Miskin found that Plaintiff was allegedly abstinent from substance abuse for two years, and thus, it had no current effect on her functioning. (R. 372).

---

[4] Global assessment of functioning (GAF) of between 61 and 70 indicates "mild" symptoms (e.g. depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning, with minor medical problems. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV) (4th ed. Text Revision 2000).

In compliance with the Order of Remand by the Appeals Council, the ALJ evaluated medical evidence submitted by Plaintiff. (R. 18). Records from Adult Family Health Services ("AFHS") show that Plaintiff took a Psycho-Social Assessment on June 29, 2005. (Id.) Plaintiff was well-groomed and displayed appropriated affect and mood. (Id.) A psychiatric evaluation on the same day reported that Plaintiff had sad affect and depressed mood; however, the evaluation also reported her speech as normal, her memory as intact, and her intelligence as average. (Id.) Plaintiff denied experiencing hallucinations, but complained of suicidal and homicidal ideations. (Id.) During her next visit, Plaintiff's medication was increased when she complained of audio hallucinations. (R. 389). On August 10, 2005, Plaintiff's medication was again modified when she reported getting into a fight with a woman due to her increased feelings of impulsivity. (Id.)

Dr. Fulford conducted a psychological evaluation of Plaintiff on December 13, 2006. (R. 392–394). Plaintiff reported that she had used cocaine a couple months prior to the evaluation and that she was in a day program for drug counseling. (R. 393). Plaintiff also conveyed that she attended school through seventh grade in special education classes.[5] (Id.) Dr. Fulford diagnosed Plaintiff with Axis I dysthymic disorder and substance abuse in early remission; nothing known in Axis II; Axis III complaint of lower back and right leg pain; Axis IV special education, joblessness, MICA program; and Axis V GAF of 65.[6] With the exception of finding that her short-term memory was mildly impaired and her concentration was in the impaired range, the

---

[5] *But see* R. 118. In her disability report, Plaintiff indicates she has not attended any special education classes.

[6] *See supra* note 3 and accompanying text.

mental status evaluation was normal. (Id.) Plaintiff was fully oriented and cooperative, her mental control was good, and her abstract thinking was fair. (Id.) Dr. Fulford did not find signs of psychomotor agitation or retardation. (Id.) Plaintiff exhibited normal speech and was able to follow one and two-step commands. (Id.)

Subsequently, Dr. Fulford completed a mental RFC assessment form on January 18, 2007. (R. 395–97). Dr. Fulford opined that Plaintiff had slight limitations in her abilities to understand, remember, and carry out short and simple instructions; moderate limitations in ability to understand, remember, and carry out detailed instructions; and marked limitations in her judgment of simple work-related decisions. (Id.)

Dr. Fechner testified at Plaintiff's second hearing as an impartial board certified medical expert. (R. 81, 485–88). Dr. Fechner confirmed that Plaintiff had asthma and took proper medication for it. (R. 485). Plaintiff had one asthma related emergency room visit in May 2004, but had no hospitalizations. (Id.) According to Dr. Fechner, Plaintiff's asthma was fairly controlled. (Id.) Dr. Fechner also stipulated that an October 2003 x-ray of Plaintiff's right knee showed some post-degenerative arthritis, with the screws and hardware in proper place and no fracture or dislocation. (Id.) Although the right knee was tender, it retained full ranges of motion, and Plaintiff was able to walk without a cane, squat, stand on heels and toes, and perform transfers on her own. (R. 485–86).

According to Dr. Fechner, Plaintiff's impairment did not meet or equal any listed impairment. (R. 486). After acknowledging that he was not a psychiatrist, Dr. Fechner testified that an individual with a cocaine or alcohol addiction would further increase any paranoid feelings, depression, or asthma they already had. (Id.) Dr. Fechner opined that Plaintiff had the

6

RFC to perform light work, involving standing or walking for six hours in an eight-hour work day and lifting or carrying ten pounds frequently and up to twenty pounds occasionally, not involving exposure to extremes of temperature, dust, chemical, and pulmonary irritants.

## II.     Standard of Review for Disability Benefits.

This Court reviews the determination of the Commissioner to assess whether there is substantial evidence supporting the decision.  42 U.S.C.A. §405(g); *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938); *Brown v. Bowen*, 845 F.2d 1211,1213 (3d Cir. 1988).  Substantial evidence is "more than a mere scintilla. . . [i]t means such relevant evidence as a reasonable mind might accept as adequate."  *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Consol. Edison*, 305 U.S. at 229).  If there is substantial evidence supporting the Commissioner's finding, this Court must uphold the decision even if this Court might have reasonably made a different finding based on the record.  *See Simmonds v. Hecker*, 807 F.2d 54, 58 (3d Cir. 1986).

## III.    Standard for Finding of Disability

An individual may be entitled to Social Security Benefits upon a finding of disability by demonstrating that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. §423(d)(1)(A).  A disabling impairment is defined as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3) and 1382c(a)(3)(D).  An individual will be found disabled only if the impairment is so severe that he

is not only unable to do his previous work, but cannot, considering his "age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner uses the following five-step analysis to determine whether an individual is disabled:

Step One: Substantial Gainful Activity. The Commissioner first considers whether the individual is presently engaged in substantial gainful activity. If so, the individual will be found not disabled without consideration of his medical condition. 20 C.F.R. §§404.1520(b) and 416.920(b).

Step Two: Severe Impairment. If the individual is not engaged in substantial gainful activity, he must then demonstrate that he suffers from a severe impairment or combination of impairments that significantly limits his ability to perform basic work activities. 20 C.F.R. §§404.1520(c) and 416.920(c).

Step Three: Listed Impairment. If plaintiff demonstrates a severe impairment, the Commissioner will then determine whether the impairment is listed in the regulations set forth at 20 C.F.R. Pt. 404, Subpt. P, App. 1 or is the equivalent of a listed impairment. If the individual has such an impairment, the Commissioner will find the individual disabled. 20 C.F.R. §§404.1520(d) and 416.920(d).

Step Four: Residual Functional Capacity. If the individual does not have a listed impairment, the Commissioner must determine whether the individual has the residual functional capacity to perform his past relevant work. Residual functional capacity is defined as what the claimant can still do despite his limitations. If he has the capacity to perform past relevant work,

the individual will be found not disabled. 20 C.F.R. §§404.1520(e)-(f) and 416.920(e)-(f).

Step Five: Other Work. Finally, if the individual is unable to perform past work, the Commissioner then considers the individual's residual functional capacity, age, education, and prior work experience to determine if he is able to perform other work functions. If the individual cannot do so, he will be found disabled. 20 C.F.R. §§404.1520(g) and 416.920(g).

The five-step analysis to determine whether an individual is disabled involves shifting burdens of proof. *Wallace v. Secretary of Health and Human Services*, 722 F. 2d 1150, 1153 (3d Cir. 1983). The claimant bears the burden of persuasion in the first four steps, but if the analysis reaches the fifth step, the Commissioner bears the burden of proving that the claimant is capable of gainful employment other than his past relevant work and that jobs which the claimant can perform exist in substantial numbers in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If there is a finding of disability or non-disability at any point during the review, the Commissioner does not review the claim further. 20 C.F.R. §§404.1520(a)(4) and 416.920(a)(4).

**IV.   Analysis**

At Step 1, the ALJ determined that the Plaintiff did not engage in substantial gainful activity since the onset of her alleged disability on August 11, 2003. At Step 2, the ALJ determined that the medical evidence on record established the existence of the following severe impairments: disorders of the back, knee fracture, depression, borderline personality disorder, and a history of substance abuse. 20 C.F.R. 416.920(c). At Step 3, the ALJ determined that the Plaintiff's severe impairments did not meet or equal the criteria set forth in Appendix 1, Subpart

P, Regulation No. 4.[7]  20 C.F.R. 416.920(d), 416.925, 416.926.

The ALJ found at Step 4 that, although Plaintiff was unable to perform any past relevant work,[8] she retained the residual functional capacity ("RFC") to engage in light work activity. (R. 16, 22). The ALJ specified that such light work included standing or walking for six hours in an eight hour work day, carrying ten pounds frequently and up to twenty pounds occasionally, and tasks involving simple repetitive skills. At Step 5, the ALJ determined that given Plaintiff's RFC and vocational factors of age, education, and past work experience, Plaintiff was able to perform work other than her past relevant work. Consequently, the ALJ concluded that under medical vocational rule 201.27, a significant number of jobs existed that Plaintiff could perform, and therefore, Plaintiff was not disabled (R. 23, 24).

Plaintiff argues that: (1) the ALJ erred when he found that Plaintiff's impairment did not meet or equal the criteria set forth in Listing 12.04 for affective disorders because the ALJ failed to properly evaluate and consider all of the medical opinions and evidence; and (2) the ALJ erred in his determination of Plaintiff's RFC by failing to consider all relevant medical evidence.

### A. Whether the ALJ's Finding that Plaintiff's Impairment Did Not Meet or Equal the Listed Criteria Is Supported By Substantial Evidence

Plaintiff argues that the ALJ erred when he found that Plaintiff's impairment did not meet or equal Listing 12.04 for affective disorders. 20 C.F.R., Part 404, Subpart P, Appendix 1.

---

[7] Specifically, the ALJ reviewed Plaintiff's orthopedic impairment under section 1.00 and found that the record did not reflect that the impairment produced an inability to ambulate or perform manipulations effectively. (R. 15). The ALJ also found that Plaintiff's mental impairments constituted only a slight abnormality, as detailed in Listing 12.00, in her ability to perform work activities. (Id.)

[8] *See supra* note 2 and accompanying text.

10

Specifically, Plaintiff contends that the ALJ failed to consider medical opinions and further medical evidence. The ALJ must explain his reasoning to support his conclusion, such that the determination is amenable to meaningful review. *Burnett v. Commissioner of SSA*, 220 F.3d 112, 126 (3d Cir. 2000). Should there be substantial evidence of record to support the ALJ's findings, the findings shall be affirmed. *Alexander v. Shalala*, 927 F. Supp. 785, 791 (D.N.J. 1995), *aff'd per curiam*, 85 F.3d 611 (3d Cir. 1996).

The ALJ properly considered the evidence of the record in determining whether Plaintiff proved that she met or equaled the requirements of Listing 12.04. Based on medical findings and Plaintiff's treatment history, the ALJ found that Plaintiff did not exhibit severe impairment that would prevent her from performing other work. (R. 15). Although Plaintiff argues that she meets the listed requirement, the ALJ is not obligated to accept Plaintiff's assertions without question, but instead, the ALJ exercises discretion to make an evaluation based on medical findings and other evidence. *LaCorte v. Bowen*, 678 F. Supp. 80, 83 (D.N.J. 1988) (citing *Brown v. Schweiker*, 562 F. Supp. 284, 286 (E.D. Pa. 1983)).

Physical or mental impairments must be demonstrated by medical evidence, such as medical signs or laboratory findings, and are not established solely by Plaintiff's complaints of symptoms. 20 C.F.R. § 404.1508; *see also Izzo v. Commissioner of Social Sec.*, 186 Fed. Appx. 280 (3d Cir. 2006) (holding that claimant's asthma was not a severe impairment due to lack of medical signs or findings on the record). Although GAF scores suggested that Plaintiff might have mental function difficulties, the ALJ noted that further clinical findings contradicted restrictive assessments that would cause her mental disability to meet or equal the listed criteria. (R. 18). In January 2004, Dr. Vassallo conducted a consultative examination and reported that

although Plaintiff had chronic back pain, she did not exhibit neurological deficits. (R. 227). Dr. Fechner, an impartial board certified medical expert, further testified at the second hearing that Plaintiff's impairment did not meet or equal any listed impairment. (R. 486). Dr. Fechner also opined that an individual with a cocaine or alcohol addiction would worsen any pre-existing asthma or feelings of paranoia or depression. (Id.)

  The ALJ also relied on the AFHS mental examination in June 2005, which revealed that Plaintiff was well-groomed with appropriate mood and affect results, and fully oriented and insightful with normal speech. (R. 381, 386). An examination by Dr. Solomon Miskin the following month showed that while Plaintiff's adaptability and response to supervision were limited, her memory and judgment were intact, and she suffered no impairment to her recall and concentration abilities. (R. 369–70). Further mental examinations from September 2005 to December 2006 at the AFHS reported some complaints of delusions and hallucinations. (R. 402-08, 412-13). However, Plaintiff's behavior was reportedly calm, her speech was normal, her mood was "OK," her thought process was logical and coherent, and no suicidal ideations were present. (Id.)

  Plaintiff contends that an examination in January 2007 conducted by Dr. Fulford shows that she has a "marked" limitation in her ability to make judgments about simple work activities. While Dr. Fulford's did find that Plaintiff had a marked limitation in her ability to make judgments about simple work-related decisions, (R. 395) other evidence demonstrates that Plaintiff had only slight limitations to her ability to understand, remember, and carry out short simple instructions. (Id.) Her ability to carry out short simple instructions were only slightly limited as well. (Id.)

12

The ALJ found that despite the findings of Dr. Fulford and evidence of anxiety and depression, Plaintiff retained her ability to concentrate, pay attention, and solve problems. (R. 20). The ALJ noted Plaintiff's ability to maintain social functioning, manage money, use public transportation, and run errands, such as picking up her nieces from school. (Id.) The ALJ concluded that although Plaintiff had some mental judgment limitations, they were not so severe as to preclude her from all work activity. (Id.) This conclusion was supported by Dr. Fulford's December 2006 mental status examination, which showed that Plaintiff had adequate judgment, she was fully oriented and cooperative, she was able to follow one and two-step commands, and her "mental control was good." (R. 393).

The December 2006 examination also reported that Plaintiff alleged she had low energy and heard voices telling her to commit suicide. (Id.) However, no looseness of association or tangential thinking was exhibited. (Id.) The ALJ is permitted to discount Plaintiff's subjective complaints if his finding is supported by substantial evidence. *See Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002). When considering Dr. Fulford's evaluation, the ALJ found that despite anxiety and depression, Plaintiff was able to engage in many activities of daily living that support a determination that despite any deficits, Plaintiff's ability to work was not significantly impacted nor was the impact severe enough to prevent her from engaging in all work activity. (R. 20).

The ALJ found an absence of clinical findings to show that Plaintiff was unable to perform activities of daily living. (Id.) Plaintiff testified that she was able to dress and bathe herself, go to the store, pick her nieces up from school, take public transportation, and attend a MICA program 3 to 5 days a week. (Id.) Plaintiff also reported that she cooked, cleaned, took out her own garbage, watched television, and visited friends and religious places. (Id.) The ALJ

13

concluded that there were no indications of any mental impairments that would prohibit Plaintiff from maintaining social functions because she was capable of engaging in a serious ongoing relationship with her boyfriend, visiting friends and family, and picking up her nieces from school. (Id.) In addition, the ALJ determined that her ability to manage money, engage in household chores, and watch television for extended periods were evidence of Plaintiff's ability to think and concentrate. (Id.)

The ALJ further considered Plaintiff's evaluations from AFHS between September 27, 2005 and December 11, 2006. Although during this period Plaintiff complained of poor sleep, inability to obtain relief from medication, and hallucinations, her medical evaluations found that Plaintiff was stable with no significant interim history. (R. 402–03, 19). Mental status evaluations reported that Plaintiff was oriented to all three spheres, displayed a calm and cooperative demeanor, lacked any involuntary movements, had normal speech and articulations, was logical and coherent, and denied experiencing delusions or suicidal or homicidal ideations. (R. 19, 402–412). Thus, the ALJ found that "the paucity of clinical findings or signs and normal mental status examinations significantly diminish the claim of severe depression and severe inability to focus." (R. 21). This finding is supported by substantial evidence.

      **B.**    **Whether Plaintiff Retained the Residual Functional Capacity to Perform Light Work**

Plaintiff also contends that the ALJ failed to consider relevant evidence in determining that Plaintiff retained an RFC for light work. Plaintiff further argues that the ALJ did not comply with the requirements of SSR 96–8p, mandating that all capacity findings be based on all relevant evidence on the record, including medical history, medical signs and laboratory findings,

14

and medical source statements. SSR 96–8p.

The ALJ found that Plaintiff has the RFC for light work involving standing or walking for six hours in an eight-hour work day, lifting or carrying ten pounds frequently and up to 20 pounds occasionally, and simple repetitive skills. (R. 16). Based on the requirements of 20 C.F.R. 416.929 and SSRs 96–4p and 96–7, the ALJ considered Plaintiff's symptoms and objective medical evidence. In addition, the ALJ considered opinion evidence according to the requirements of 20 C.F.R. 416.927 and SSRs 96–2p, 96–3p, 96–5p, and 96–6p.

The ALJ followed a two-step process when considering Plaintiff's symptoms by: (1) determining whether there was an underlying medically determinable physical or mental impairment and (2) evaluating the intensity, persistence, or functionally limiting effects of the symptoms. 20 C.F.R. 416.929. The ALJ also considered other evidence outlined in 20 C.F.R. 416.929(c) to assess the credibility of the claimant's statements.

The ALJ found that there was no evidence in the documentary record to show a "continuation or claim of consistent complaints of pain in the law back, right knee, right leg or right hand, which cause significant limitations in her ability to perform exertional activity." (R. 21). The ALJ notes that the record fails to show that Plaintiff had or continues to have any ongoing intensive medical treatment or any deterioration in her condition. (Id.) The ALJ also noted that examinations have repeatedly shown that Plaintiff is able to "stand, sit, walk, and use her upper and lower bilateral extremities without any significant limitation of motion, muscle weakness, numbness, tingling, sensory changes or decreased reflexes." (Id.) Plaintiff points to no evidence other than her subjective complaints to contradict these findings. Because the ALJ

carefully reviewed the medical evidence and Plaintiff's testimony, and stated reasons why he weighed certain evidence in the record more heavily than other countervailing evidence, this Court finds that he ALJ's findings are supported by substantial evidence.

As discussed above, the ALJ found that Plaintiff's limitations due to depression and mental status were only slight limitations to her ability to work. For the reasons discussed above, this finding is supported substantial evidence and supports the ALJ's determination that Plaintiff has an RFC for light work.

The ALJ found that Plaintiff's subjective complaints of disabling pain, mental distress. and other symptoms precluding work activity were not fully credible or consistent with Social Security Ruling 96–7p and 20 C.F.R. 416.929. (R. 21). Plaintiff asserts that the ALJ failed to consider Dr. Fulford's finding that Plaintiff was markedly impaired making judgments on simple work decisions. However, the ALJ did consider Dr. Fulford's findings, which included a findings that, despite Plaintiff's mild impairments in concentration and short-term memory, her mental status examination was essentially normal. (R. 19, 393). The ALJ found that Plaintiff's limitations were not so severe as to preclude Plaintiff from all work activity. Taking into consideration the medical evidence and other evidence on the record, the ALJ determined that Plaintiff is able to function successfully in work settings with instructions, co-workers, and supervisors, so long as she is not exposed to tasks involving high-stress situations. (R. 20).

## V.     Conclusion

For the aforementioned reasons, and after careful review of the record, the Court finds that there is substantial evidence to support the ALJ's decision to deny Plaintiff SSI benefits.

The ALJ carefully considered the record, including Plaintiff's testimony, and there is substantial evidence in support of the ALJ's decision that Plaintiff had the residual functional capacity to perform light work and that such jobs existed in the local and national economy. Accordingly, the decision to deny Plaintiff SSI benefits is hereby **AFFIRMED**.

Therefore, **IT IS** on this 10th day of July, 2008, hereby:

**ORDERED** that the decision of the Commissioner is **AFFIRMED**; and it is further

**ORDERED** that this case is **CLOSED**.

                                                           **/s/ Faith S. Hochberg**
                                                            Hon. Faith S. Hochberg, U.S.D.J.